# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| ADRIAN RICHARD | : | DOCKET NO. 04-1987 |
| VS. | : | JUDGE TRIMBLE |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), the undersigned finds that the Commissioner's decision is supported by substantial evidence in the record and is consistent with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

On April 18, 2001, Adrian K. Richard filed claims for Disability Insurance Benefits and Supplemental Security Income payments. (Tr. 69-72, 187-189). She alleged an inability to work since March 15, 2000, due to scoliosis, stomach ulcer, hemorrhoids, anemia, depression, and allergies. (Tr. 70, 84). The claims were denied at the initial level of the administrative process. (Tr. 27-31, 190). Thereafter, Richard requested, and received a July 17, 2003, hearing before an Administrative Law Judge ("ALJ"). (Tr. 191-263). However, in a May 27, 2004, written decision, the ALJ determined that Richard was not disabled under the Act, finding at Step Five of

the sequential evaluation process that she could make an adjustment to work which exists in significant numbers in the national economy. (Tr. 12-25). Richard appealed the unfavorable decision to the Appeals Council. Yet, on July 2, 2004, the Appeals Council denied Richard's request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

Richard now seeks to have this court review the denial of benefits. She alleges the following errors:

(1) the ALJ failed to apply the proper non-severity standard and to evaluate plaintiff's impairments in the aggregate;

(2) the ALJ failed to fully and fairly develop the record, with resulting prejudice;

(3) the ALJ's residual functional capacity assessment is not supported by substantial evidence;

(4) the ALJ's residual functional capacity assessment supports per se entitlement under SSR 85-15; and

(5) plaintiff was denied due process of law.

## STANDARD OF REVIEW

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented her from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## **LAW AND ANALYSIS**

The secretary evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit her to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Secretary to establish that the claimant can perform other work. If the Secretary meets this burden, then the claimant must then prove that he cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

3

At Step Two of the sequential evaluation process, the ALJ determined that plaintiff's depression was a severe impairment. (Tr. 13, 24). However, the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. *Id*.

The ALJ next determined that Richard retained the residual functional capacity for light work, reduced by: "moderate limitations in [her] ability to understand, remember and carry out short simple instructions, to carry out detailed instructions, and to interact appropriately with the public, supervisors, and coworkers; and marked limitations in the ability to carry out detailed instructions, to make judgments on simple work-related decisions, and to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting." (Tr. 19).[1]

Plaintiff argues that the ALJ's residual functional capacity assessment is not supported by substantial evidence. We disagree. We first emphasize that plaintiff does not appear to challenge the ALJ's physical residual functional capacity assessment. If anything, the ALJ was more than generous in assessing any exertional limitations at all. (*See*, Tr. 165-171, 114-116).

Instead, the focus of plaintiff's challenge is the ALJ's mental residual functional capacity

---

[1] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

determination. Pursuant to the record, plaintiff underwent four psychological evaluations. Three of the evaluations were conducted by Jerry L. Whiteman, Ph.D., and one was conducted by Lawrence S. Dilks, Ph.D.[2] The ALJ essentially adopted Whiteman's November 18, 2002, evaluation and associated Medical Source Statement of Ability to do Work-Related Activities (Mental). (Tr. 159-163).[3]

Of the other three assessments, the only one that plaintiff could use to cry foul (because there is only one with more severe limitations) is Dr. Whiteman's post-hearing, July 21, 2003, evaluation and assessment. (Tr. 182-186). However, the ALJ observed that plaintiff's representative likely sent her back for a fourth evaluation only because the vocational expert opined that there were other jobs that she could perform in the national economy despite the substantial limitations imposed by Dr. Whiteman's November 18, 2002, assessment.

The ALJ further discounted Dr. Whiteman's July 21, 2003, assessment because Whiteman found that plaintiff's condition had deteriorated, but yet he assigned the same GAF as

---

[2] Also, on February 21, 2002, a non-examining physician, Cathy Castille, Ph.D., completed a, a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique. (Tr. 139-141,143-156).

[3] On November 18, 2002, Richard was seen by Dr. Whiteman for a psychological evaluation. (Tr. 159-161). Richard acknowledged a history of alcohol abuse, including drinking about six drinks per night. *Id*. She had a history of auditory hallucinations. *Id*. On administration of the MMPI, Richard answered an improbable number of F scale items which resulted in an invalid profile. *Id*. Whiteman diagnosed depression, by history with suicidal gestures and dependent personality. *Id*. He assigned a GAF of 50. *Id*. He opined that her cognitive abilities appeared to be low to below average. *Id*. Whiteman noted that she appeared to be relatively unstable, with a low stress tolerance. *Id*.
Whiteman also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental). (Tr. 162-163). He indicated that Richard had marked difficulties in her ability to carry out detailed instructions, to make judgments on simple work-related decisions, and to respond appropriately to work pressures or changes in a usual work setting. *Id*. All other activities were moderately limited. *Id*.

in his November 18, 2002, evaluation. We emphasize that the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). (citation omitted). It is manifest that the weight to be given a physician's statement is dependent upon the extent to which it is supported by specific clinical findings. *Jones v. Heckler*, 702 F.2d 616, 621 (5th Cir. 1983). Here, there was substantial evidence to support the ALJ's decision to derive his residual functional capacity assessment from Dr. Whiteman's November 18, 2002, evaluation and medical source form.

Plaintiff complains that the ALJ failed to evaluate her impairments in the aggregate because he did not credit Dr. Whiteman's other diagnoses of dependent personality and avoidant/schizoid personality. We find no merit to this argument. Dr. Whiteman's dependent personality diagnosis was included in his November 18, 2002, evaluation, and he considered that impairment in his medical source statement. (Tr. 160-163). The avoidant/schizoid personality diagnosis was contained in Dr. Whiteman's July 21, 2003, evaluation, which was rejected by the ALJ. *See*, discussion, *supra*.

Plaintiff next contends that the ALJ failed to fully and fairly develop the record because the ALJ did not obtain additional testing to rule out "Pain Disorder, by Client History" as indicated by Dr. Dilks. (*See*, 175). "The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996). The decision of the ALJ will be reversed as not supported by substantial evidence only if the claimant shows not only that the ALJ failed to fulfill his duty to adequately develop the record, but also that claimant was prejudiced thereby. *Brock, supra.* "To establish prejudice, a claimant must show that he could and would have

6

adduced evidence that might have altered the result." *Id.* (internal quotes omitted).

Here, Dr. Dilks noted that "[t]he client attested to a history of pain disorder, but no obvious signs or symptoms of this was noted during the course of the interview. This *may* warrant further investigation." (Tr. 175)(emphasis added). Given the completely benign physical evaluation and assessment by Dr. Taylor, (Tr. 165-171) it is not surprising that the ALJ did not further act upon Dr. Dilks' lukewarm suggestion. Furthermore, even if plaintiff were able to establish that the ALJ failed to fulfill his duty to adequately develop the record, she has not established resulting prejudice. *Brock, supra.*

Plaintiff next argues that her due process rights were violated at the hearing because her cross-examination of the medical expert, Dr. Fain, was not "unfettered." Although, plaintiff unquestionably has a right of cross-examination, she does not cite any authority for the proposition that the right is "unfettered." *See*, *Tanner v. Secretary of Health and Human Services,* 932 F.2d 1110, 1112 (5th Cir. 1991)(quoting *Wallace v. Bowen*, 869 F.2d 187, 192 (3d Cir.1989)("· · · an opportunity for cross-examination is an element of fundamental fairness of the hearing to which a claimant is entitled · · ·")). Moreover, plaintiff has not established any resulting prejudice. Dr. Fain testified only that plaintiff's impairments did not meet or equal any of the listings of impairments.[4] Plaintiff does not argue that her impairments are of listing severity. Also, to the extent that plaintiff contends that he did not have an opportunity to cross-examine Dr. Dilks, we point out that the ALJ despite favoring Dr. Dilks' report, instead relied on the limitations as assessed by Dr. Whiteman.

Plaintiff argues that because she had severe limitations in the basic mental demands of

---

[4] Dr. Fain also answered a question on alcoholism. However, the instant claims were not disallowed due to alcoholism.

7

unskilled work, she was entitled to a *per se* finding of disability pursuant to SSR 85-15. However, the ruling states that "[a] substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would *justify* a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base." SSR 85-15 (emphasis added). The ruling does not state that the ALJ is *compelled* to find the claimant disabled; it states only that such a determination would be warranted under those circumstances. Indeed, in the very next paragraph, the ruling cites an example for which a finding of disability would be "appropriate." SSR 85-15. Once again, the language suggests a permissive outcome, not a mandatory one. Accordingly, the ALJ was not precluded from relying on vocational expert testimony to find plaintiff not disabled. *See, Frames v. Barnhart*, 156 Fed. Appx. 688 (5th Cir. 12/8/2005)(unpubl.).[5]

The ALJ proceeded to Step Four of the sequential evaluation process and concluded that Richard was unable to return to her past relevant work. (Tr. 19). Accordingly, the ALJ advanced to Step Five. At this step, the ALJ determined that plaintiff was a younger individual, had a high school education, and that transferability of work skills was not an issue. (Tr. 19-20, 24-25).[6] Using the medical-vocational guidelines as a framework, the ALJ concluded that Richard was not disabled pursuant to Rule 202.21. However, because Richard suffered from non-exertional mental impairments, the ALJ relied on the testimony of a vocational expert

---

[5] In *Frames*, the Fifth Circuit considered other "permissive" language in SSR 85-15, and concluded that notwithstanding SSR 85-15, the ALJ was within his discretion to rely on vocational expert testimony and find the claimant not disabled. *Frames, supra*.

Unpublished Fifth Circuit opinions issued on, or after January 1, 1996, are ordinarily not precedent. FRAP 47.5.4. However, they are persuasive. *Id*. Moreover, the fact that a case remains unpublished reflects the panel's belief that the decision simply reaffirmed a well-settled principle of law. *See*, FRAP 47.5.1.

[6] Richard was 39 at the time of the hearing. (Tr. 195).

8

("VE") who opined that plaintiff would be capable of making an adjustment to perform other jobs that exist in significant numbers in the national economy. (Tr. 20, 25). The jobs he identified included a janitor/cleaner position (75,381 jobs nationally; 1,237 jobs regionally) and an assembler position(308,418 jobs nationally; 1,566 jobs regionally). (Tr. 247-249).

Plaintiff contends that her due process rights were violated because her right to cross-examine the VE was truncated by the ALJ. Plaintiff's representative was permitted to cross-examine the VE. (Tr. 250-262). However, he departed on irrelevant tangents. Eventually, the ALJ determined that he had heard enough. Even if the ALJ should have permitted plaintiff's representative to continue his cross-examination, plaintiff has not demonstrated any resulting prejudice. At the time he was cut off, plaintiff's representative said that he was almost finished and had one other question. (Tr. 262).

Plaintiff's current counsel argues that the representative could have questioned the VE regarding the jobs that he identified because they purportedly constitute semi-skilled work – not unskilled work. However, the job codes that the VE identified have an SVP of 2 (*i.e.* unskilled work): 739.687-026 & 030; 709.687-010. (Tr. 248-249, 255-256). Plaintiff also seems to now argue that she should have been allowed to question the VE regarding the hypothetical. However, the ALJ's hypothetical reasonably incorporated all of the limitations recognized in the ALJ's residual functional capacity assessment, and that assessment is supported by substantial evidence. *See* discussion, *supra.* That is all that is required. *See, Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994).

Finally, plaintiff complains that the VE was unable to answer whether a claimant as set forth in the hypothetical could hold and maintain employment. (*See*, Tr. 261-262). Yet, the hypothetical itself asked for jobs that the claimant could consistently perform on a 40 hour week,

eight hours per day. (Tr. 246-247). In sum, plaintiff has not established that she was prejudiced by the ALJ's actions, and thus any error was harmless. *See, Bowling, supra.*

For the foregoing reasons, the undersigned finds that plaintiff's assignments of error lack merit, and that the Commissioner's determination that plaintiff was not under a "disability," as defined by the Social Security Act, is supported by substantial evidence and is free of legal error. Therefore,

IT IS RECOMMENDED that the Commissioner's decision be affirmed and the matter dismissed.

Under the provisions of 28 U.S.C. §636(b)(1)©, the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 6th day of June, 2006.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE